Liacopoulos, Appellant, v. Coumoulis.

330

Argued October 9, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*H. P. Eberharter*, for appellant.—The charge of the court was inadequate, said charge failing to define libel and failing to give the jurors a proper conception of the issue for them to decide: Holland v. Flick, 212 Pa. 201; Oles v. Pittsburgh Times, 2 Pa. Superior Ct. 130; McIntyre v. Weinert, 195 Pa. 52; Mengel v. Reading Eagle Co., 241 Pa. 367; Price v. Conway, 134 Pa. 340; Drebin

v. Jewish World, 262 Pa. 169; Wood v. Boyle, 177 Pa. 620; Binder v. Pottstown Daily News, 33 Pa. Superior Ct. 411; Wilde v. McKee, 111 Pa. 335; Egan v. Print. & Pub. Co., 64 Pa. Superior Ct. 115.

The procurance of the publication made the defendant responsible: Bruce v. Reed, 104 Pa. 408.

The writing of the letter to the newspaper showed deliberation and malice: Collins v. Dispatch Publishing Co., 152 Pa. 187; Wills v. Hardcastle, 19 Pa. Superior Ct. 525; Com. v. Wolfinger, 7 Kulp 537; Moore v. Publishing Co., 8 Pa. Superior Ct. 152.

The charge of the court below was prejudicial to the interests of plaintiff: Fisher v. Publishing Co., 239 Pa. 200; Collins v. Publishing Co., 152 Pa. 187; McDonald v. Lee, 246 Pa. 253.

The court below should have permitted plaintiff to introduce the translation and innuendo contained in the statement of claim, defendant having admitted the same by his plea of justification: Oles v. Pittsburgh Times, 2 Pa. Superior Ct. 130; Binder v. Pottstown Daily News, 33 Pa. Superior Ct. 411; Livingston v. Reich, 54 Pa. Superior Ct. 346; Palmer v. Harris, 60 Pa. 156.

Plaintiff having pleaded special damages, should have been permitted to show decreased earnings as a result of the libel: Sacchetti v. Fehr, 217 Pa. 475; Com. v. Foley, 292 Pa. 277; Scott v. Sampson, 8 Q. B. D. 491; Burkhart v. North American Co., 214 Pa. 39; Livingston v. Reich, 54 Pa. Superior Ct. 346.

*Charles P. Lang*, for appellee.—Whether the case was properly submitted to the jury, is ruled by Mengel v. Reading Eagle Co., 241 Pa. 367.

A translation of the article was laid as innuendo in the statement of claim and the court properly overruled the offer to put the innuendo in evidence before the jury as proof of the accuracy of the translation: Stoner v. Erisman, 206 Pa. 600.

If the jury believed the publication was true, or that defendant had just cause to believe it to be true, the verdict should be for defendant: Ferber v. Pub. Assn., 212 Pa. 367; Sacchetti v. Fehr, 217 Pa. 475.

OPINION BY MR. JUSTICE SADLER, November 25, 1929:

The plaintiff, a Greek, resident of the City of Pittsburgh, had been employed there since 1918. In conjunction with another, he prepared a book of an historical nature. To increase its sale, he surrendered, in 1924, the position held by him with a local bank, and thereafter traveled from point to point, making efforts to dispose of the publication in which he was interested. Before leaving Pittsburgh, he had become indebted to certain of his friends. He had previously induced the defendant to endorse a note for $200, but failed to meet the obligation when due, and the endorser was compelled to pay the discounting bank the principal and interest, and a new note for $205 was executed by plaintiff, naming defendant as payee. The plaintiff failed to comply with several written requests for its satisfaction when overdue. Finally, the creditor notified him that a failure to pay within a fixed time would result in exposure. The demand for reimbursement was not complied with, whereupon defendant caused to be inserted in a newspaper, published in the Greek language, a statement reflecting upon the conduct of plaintiff, alleged by the latter to be libelous and causing injury to him, for which recompense was asked.

The article set forth that the plaintiff, before leaving Pittsburgh, "put in hand" from several members of his own nationality over $5,000, represented by different notes, which he refused to liquidate. The default in the payment of $205, advanced by the defendant, was referred to as part of the indebtedness. The newspaper was asked to publish these facts "because possibly [the plaintiff, naming him], a salesman of albums, traveling under the smile of deceit, may 'put more in hand.' " This

writing was circulated, and, according to plaintiff, made difficult or impossible the further carrying on of the work in which he was engaged, as a result of which special damage was suffered, though none was shown at the trial by competent evidence. The defendant pled justification to the action instituted.

In the statement filed, it was averred, as an innuendo, that the charge that plaintiff "put in hand" money of others meant, when translated into English, that he "cheated, defrauded and swindled." In view of the plea of justification, plaintiff contended that this was an admission not only of the publication of the writing, but of the meaning ascribed to the words "put in hand," as charged, and, for this purpose, the statement, as interpreted in the claim filed, should be received in evidence. This offer was properly refused by the court. An innuendo cannot be accepted as true, when the words used enlarge the natural and ordinary sense of the language, or otherwise may place a false construction thereon: Snyder v. Tribune Co. (Ia.), 143 N. W. 519. "An innuendo, however, can never add to nor change the meaning of the defamatory statement, or operate as an averment, imparting into the statement anything which is not a usual and natural presumption from the precedent words......It is a question of fact for the jury as to whether the defamatory statement was used and understood in the sense charged": Cunningham v. Underwood, 53 C. C. A. 99, 116 Fed. 803; Julian v. Kansas City Star Co., 209 Mo. 35, 107 S. W. 596 (writ of error dismissed, 215 U. S. 589). See also notes 31 L. R. A. (n. s.) 140; 50 L. R. A. (n. s.) 1043.

In the present case, the printed article was in the Greek language, and the meaning of the words complained of, as translated into English, was in dispute. The plaintiff testified that he was thereby designated as a cheat or fraud, but another witness, called on his behalf, ascribed the meaning to be the borrower of money without intending to repay it. This construction was

borne out by the defendant, and the witnesses called by him. The true meaning was a question for the jury, and it was for that body to determine whether the plaintiff had been defamed as he alleged: Stoner v. Erisman, 206 Pa. 600; Abersold v. Marcus, 272 Pa. 199; Mengel v. Reading Eagle Company, 241 Pa. 367; McCormick v. Weinstein, 81 Pa. Superior Ct. 163; Egan v. Dubois Printing Co., 64 Pa. Superior Ct. 115. It was for the court to say whether the writing was libelous, if the jury found the language used bore the interpretation insisted upon by the plaintiff: Meas v. Johnson, 185 Pa. 12. The court did so instruct, as required, that if they found the words expressed the meaning contended for by plaintiff then they were libelous in themselves, but the jury determined that they could not be so construed, and rendered a verdict for the defendant.

The plaintiff further complains of a failure to answer various points presented defining the acts which would constitute a libel. The first three correctly set forth the proof necessary to establish a defamatory statement, but the general charge sufficiently covered the same subject-matter, and made unnecessary a repetition of the words used in the instructions asked. The jury was expressly told that if the meaning of the phrase "put in hand" was that given by plaintiff, then there was a libel, and, unless justified, he was entitled to recover damages. The fourth asked for a declaration that a presumption of legal malice followed the publication of words actionable in themselves. A sufficient answer to this objection is found in the charge of the court that plaintiff was entitled to judgment, if defendant used the words in the sense contended for. It may be noticed the jury was also instructed that if there was a "malicious, reckless and wanton attack," compensation could be given, including punitive damages. An answer to the 5th point was unnecessary, since the jury was advised that, if the words were libelous per se, no proof of actual injury was required.

The 6th asked an instruction that, if a verdict was found for the plaintiff, he was entitled to damages "for any and all natural results which would affect him personally arising out of the publication." This is true, and, if there had been proof of special damage as alleged in the statement (Leppley v. Smith, 91 Pa. Superior Ct. 117), plaintiff was entitled to the statement asked for, but there was no evidence submitted to show any such loss, and the refusal to read the point does not furnish ground for reversal. It had been offered to prove the number of books sold by plaintiff, and the price charged for each volume, but there was no attempt to fix the net profit which the plaintiff could have earned had his work continued. For this reason, the testimony, referred to in the 11th assignment, was properly refused. Where special compensation is asked, facts must be offered showing its extent, though, even in the absence of such proof, general loss arising from the publication may, in a proper case, be recovered, or even punitive damage, where the defamatory statement was maliciously circulated: Hayes v. Press Co., 127 Pa. 642.

The 14th assignment is directed to the cross-examination of the plaintiff. He had testified in chief that he was financially embarrassed when he left Pittsburgh, and it was competent to ask him the extent of this indebtedness. The record printed does not sufficiently show the testimony of the witness, to enable us to determine whether the question complained of in the 9th assignment was proper. The plaintiff, however, referred in his evidence to the same matter, and we would not be justified in reversing, even if the question was improperly asked. Other assignments, directed to the admission of testimony, are without merit, and need not be specially considered.

Complaint is made in the 16th assignment of the inadequacy of the charge of the court. This question is not raised by the statement of questions involved, and need not be passed on on this appeal: Dravo Construc-

tion Co. v. Rees & Sons Co., 291 Pa. 387. The contention between the parties below was as to the meaning of the words used in the newspaper article, and the jury was fully instructed as to its duty in considering this question. It was also told to determine whether the words used were substantially correct (Act May 11, 1901, P. L. 74, section 2; Sacchetti v. Fehr, 217 Pa. 475), and it found for the defendant. Though the trial judge might well have elaborated upon the statement made by defendant, and the evidence offered in support of it, yet he was not asked to refer more specifically to this testimony, and, in the absence of other than a general exception, this court will not reverse under such circumstances: McCaffrey v. Schwartz, 285 Pa. 561; Davis v. Cauffiel, 287 Pa. 420.

The complaint of the refusal to grant a new trial, based on matters already referred to, cannot be sustained. It is to be noted that no error is assigned to the entry of judgment for the defendant.

The judgment is affirmed.